# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

M.J. individually and as parent and
natural guardian of G.S. and C.J.,
minors,

        Plaintiffs,

        v.

LUZERNE COUNTY, *et al.*,

        Defendants.

NO. 3:17-CV-1443

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me are three motions: (1) a motion to dismiss (Doc. 35) filed by Luzerne County (the "County"), Luzerne County Children and Youth Services ("LCCYS"), Jesse Goshert ("Goshert"), and Maryann Rambus ("Rambus") (collectively, where appropriate, "County Defendants"); (2) a motion for partial dismissal (Doc. 37) filed by Concern-Professional Services for Children, Youth, and Families ("Concern"), Lisa Ross ("Ross"), and Kathy Sheridan ("Sheridan") (collectively, where appropriate, "Concern Defendants"); and (3) a motion to dismiss (Doc. 38) filed by Kathy Ryan ("Ryan"). M.J., individually and as parent and natural guardian of G.S. and C.J. ("Plaintiffs"), commenced this action against the County/LCCYS, and two employees, a private foster care agency and two employees, and a foster mother asserting claims pursuant to 42 U.S.C. § 1983 and state law related to alleged abuse and sexual assault of G.S. and C.J. while they were in foster care. Because Plaintiffs fail to plead sufficient factual matter to support a finding that Concern and Ryan are in a master-servant relationship and because the County and LCCYS are immune from liability with respect to Plaintiffs' state law claims asserted here, these vicarious liability claims will be dismissed. In all other respects, the motions to dismiss will be denied.

# I. Background

The facts as alleged in the Amended Complaint are as follows:

M.J. is the parent of minor children/Plaintiffs G.S. and C.J. (*See* Doc. 29, ¶¶ 4-5). Goshert was an LCCYS caseworker at all relevant times. (*See id*. at ¶¶ 7, 18). Rambus was Goshert's supervisor. (*See id*. at ¶¶ 8, 18). Concern is an agency that provides foster care placement and adoption services, and it had a contract with the County/LCCYS to place children into foster homes. (*See id*. at ¶ 9). Ross and Sheridan were employed by Concern as caseworkers. (*See id*. at ¶¶ 10-11, 19).

In May 2014, LCCYS had custody of G.S. and C.J. and they were placed in foster care at Ryan's home, but M.J. and her family had visitation rights. (*See id*. at ¶¶ 15-16). G.S. was three years old and C.J. was almost seventeen months old at the time. (*See id*. at ¶ 16). Goshert and Rambus were the LCCYS employees responsible for the placement of G.S. and C.J. in Ryan's home, while Ross and Sheridan were the Concern employees responsible for that placement. (*See id*. at ¶¶ 98, 100). Goshert was G.S. and C.J.'s LCCYS caseworker, and Ryan's Concern caseworkers were Ross and Sheridan. (*See id*. at ¶¶ 18-19).

Shortly after they were placed with Ryan, M.J. and her family noticed that G.S. and C.J. wore dirty clothing, smelled like they had not been bathed, and had various scrapes and bruises. (*See id*. at ¶¶ 22-28). M.J. and her family also noticed that Ryan refused to buckle the children into car seats, and instead had her minor adopted son E.R. perform that task. (*See id*. at ¶¶ 29-30). There were also times where G.S. would show up for visitations dressed inappropriately because she was dressed by E.R. (*See id*. at ¶ 37). E.R. was thirteen or fourteen years old at the time. (*See id*. at ¶ 33).

M.J. and her family spoke to Goshert and Concern about the injuries to G.S. and C.J., but they did nothing and refused to investigate these complaints. (*See id*. at ¶¶ 40-46). After Goshert began to ignore their phone calls and hang the phone up on M.J. and her family, they raised their concerns to Rambus, but, just like Goshert, she did nothing. (*See id*. at ¶¶ 47-49).

In the spring of 2015, G.S. told M.J. that E.R. "does this to me" while inserting her fingers into her vagina. (*See id*. at ¶ 51). M.J. also observed G.S. touch C.J.'s private area when the children were in the bathtub together. (*See id*. at ¶ 52). M.J. reported these events to Goshert, but he responded that it was Concern's problem. (*See id*. at ¶¶ 53-54). After M.J. reported these events to Concern, G.S. was taken for an interview and examination at the Children's Advocacy Center, but the results of that examination were never provided to M.J. (*See id*. at 55-57).

M.J. also informed Ryan of the inappropriate touching. (*See id*. at ¶ 58). Ryan subsequently initiated G.S. and C.J's removal from her home due to problems she was having with E.R. (*See id*. at ¶ 59).

Thereafter, J.B., M.J.'s cousin, applied for kinship custody for G.S. and C.J., which she obtained in August 2015. (*See id*. at ¶¶ 61, 70). J.B. observed G.S. and C.J. engaging in concerning behavior, including: (1) G.S. attempting to urinate while standing because E.R. "would pee standing up"; (2) C.J. inserting her finger into G.S.'s anus while they bathed together; (3) G.S. trying to insert a toy snake into her vagina; and (4) G.S. and C.J. attempting to enter the bathroom when occupied by a male. (*Id*. at ¶ 73). G.S. also told J.B. that E.R. "put his pee pee in my mouth and then peed in it." (*Id*. at ¶ 74). J.B. was also told by G.S. that she had informed Ryan about this behavior and Ryan "just yelled at E.R., but the abuse did not stop." (*Id*. at ¶ 75).

J.B. alerted officials about this conduct, and G.S. was again taken to the Children's Advocacy Center for an interview in the fall of 2015. (*See id*. at ¶¶ 76-79). Following that interview, J.B. was told by a counselor that the allegations were "unfounded." (*Id*. at ¶ 79).

The following summer, G.S. told both M.J. and another individual about the instances where E.R. put his privates in her mouth. (*See id*. at ¶¶ 80-83). In addition, C.J. told M.J. that E.R. touched her privates. (*See id*. at ¶ 84).

E.R., prior to being adopted by Ryan, was involved with Loftus-Vergari and Associates ("Loftus-Vergari"), a private foster care agency. (*See id*. at ¶¶ 88-89).

That agency conducted an evaluation and "determined that E.R. should not be placed in foster homes with other children because of his abuse history," which included sexual abuse. (*Id*. at ¶¶ 87, 90). In a child profile prepared for E.R.'s adoption by Ryan, Loftus-Vergari recommended that E.R. not be placed in foster homes with other children. (*See id*. at ¶ 91).

The County, LCCYS, and Concern were aware of E.R.'s history of abuse and of the evaluation and report recommending that E.R. not be placed with other children. (*See id*. at ¶¶ 35-36, 94). Goshert and Rambus had access to E.R.'s LCCYS file, including his child profile and information about his history of abuse. (*See id*. at ¶ 95). Ross and Sheridan had access to Ryan's file, including information about E.R.'s history of abuse. (*See id*. at ¶ 96). Goshert, Rambus, Ross, and Sheridan placed G.S. and C.J. "in a household with E.R., an individual with a known history of severe abuse, including sexual abuse, and who was not supposed to be placed with other children." (*Id*. at 141).

Based on the foregoing, M.J., individually and as parent and natural guardian of G.S. and C.J., commenced the instant action on August 14, 2017. (*See* Doc. 1, *generally*). Plaintiffs subsequently filed an Amended Complaint on November 20, 2017. (*See* Doc. 29, *generally*). Therein, Plaintiffs assert the following causes of action: (1) "State Created Danger/Substantive Due Process Violation" against Goshert, Rambus, Ross, and Sheridan (Count One); (2) "Unconstitutional Policies and Customs" against the County, LCCYS, and Concern (Count Two); (3) Intentional Infliction of Emotional Distress against Goshert, Rambus, Ross, Sheridan, and Ryan (Count Three); (4) Vicarious Liability against the County, LCCYS, and Concern (Count Four); and (5) Negligence against Ross, Sheridan, Ryan, and Concern (Count Five). (*See id*.).

All Defendants moved to dismiss the Amended Complaint. (*See* Docs. 35, 37-38, *generally*). Those motions have all been fully briefed and are now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## III. Discussion

County Defendants, Concern Defendants, and Ryan have each moved to dismiss the Amended Complaint. I will address the Counts in order.

## A.    Substantive Due Process.

Count One of the Amended Complaint asserts a Fourteenth Amendment substantive due process claim against Goshert, Rambus, Ross, and Sheridan pursuant

to 42 U.S.C. § 1983.[1]  The Due Process Clause of the Fourteenth Amendment generally does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals.  *See DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 198-200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989).  The Third Circuit, however, has recognized two exceptions to this rule.  *See Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006).  "First, the state has a duty to protect or care for individuals when a 'special relationship' exists.  Second, the state has a duty when a 'state-created danger' is involved."  *Id*. (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997)).  Plaintiffs invoke both of these theories in the Amended Complaint.  (*See* Doc. 29, ¶¶ 139-147, 152).

County Defendants argue that the facts as alleged in the Amended Complaint do not support a Fourteenth Amendment substantive due process claim based on either a special relationship or state-created danger.  (*See* Doc. 39, 6-11).  Concern Defendants contend the same.  (*See* Doc. 41, 7-11; Doc. 54, 2-9).  I do not agree.

In *Nicini v. Morra*, 212 F.3d 798, 808 (3d Cir. 2000) (en banc), the Third Circuit held that "when the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties.  The failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983."  The *Nicini* court further found that deliberate indifference was the appropriate culpability standard for a claim brought in the foster care context.  *See id*. at 811.  There is no dispute that Plaintiffs allege that G.S. and C.J. were placed in foster care.  (*See* Doc. 29, *generally*).

Instead, the question raised by Goshert, Rambus, Ross, and Sheridan is whether

---

[1]     Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ."  42 U.S.C. § 1983.

they are alleged to have acted with a sufficiently culpable state of mind to support a claim based on a special relationship between the parties. (*See* Doc. 39, 7-9; Doc. 54, 7-9). The answer, offer Goshert and Rambus, is no because the "gravamen" of the allegations in the Amended Complaint are that they failed to investigate the claims of abuse by E.R. (*See* Doc. 39, 7-9). These allegations, Goshert and Rambus insist, are belied by other averments in the Amended Complaint which demonstrate that G.S. was twice interviewed by child protective service officials and the allegations of abuse were determined to be unfounded. (*See id.*). Goshert and Rambus find "curious[ ]" that Plaintiffs do not allege that "anyone has ever been charged for the abuse or mistreatment of Minor Plaintiffs," and "[b]y failing to cite any actual harm, Plaintiffs cannot establish any constitutional violation." (*Id.*). Ross and Sheridan, conversely, contend that the Amended Complaint fails to allege conscience shocking behavior on their part because Plaintiffs "simply have not pled that Co-Defendant Ryan's son had a history of sexually abusing minor children, or that Defendant Concern's actions in receiving the allegations, investigating the allegations, and accepting the determination that the allegation was unfounded (on at least one occasion), amounts to conduct that shocks the conscience." (Doc. 54, 8-9).[2]

Goshert and Rambus' characterization of the Amended Complaint and the substantive due process claim set forth therein is inaccurate and incomplete.

---

[2]     Concern Defendants also argue that the Amended Complaint does not advance a cause of action pursuant to a special relationship theory. (*See* Doc. 64, 7-9). Concern Defendants are wrong, as the Amended Complaint specifically pleads a special relationship between Plaintiffs and Defendants. (*See* Doc. 39, ¶ 152). Moreover, the facts as pled in the Amended Complaint support the existence of a special relationship between the parties. Notably, "[t]he Federal Rules do not require a plaintiff to set out a legal theory at the pleadings stage, and courts have upheld a complaint against a Rule 12(b)(6) motion to dismiss even though the plaintiff appeared to rely on an inappropriate theory." *Andrews v. Monroe Cnty. Transit Auth.*, 523 F. App'x 889, 891 (3d Cir. 2013) (citing, *inter alia*, *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.")).

Plaintiffs' substantive due process claim is not limited to Goshert and Rambus' alleged failure to adequately investigate allegations of abuse. Rather, Plaintiffs base their due process claim on the placement of G.S. and C.J. in a home with a child with a known history of sexual abuse that was not to be housed with other children. Thereafter, upon placement in the home with E.R., G.S. and C.J. were sexually abused. These allegations are more than sufficient to state a plausible claim of conscience shocking conduct by Goshert and Rambus. *See Nicini*, 212 F.3d at 810-11 ("In some circumstances conduct that is deliberately indifferent will shock the conscience. Indeed, in the foster care context, most of the courts of appeals have applied the deliberate indifference standard, . . . In the context of this case, we agree that Cyrus's actions in investigating the Morra home should be judged under the deliberate indifference standard.");[3] *accord Bryan v. Erie Cnty. Office of Children & Youth Servs.*, 293 F. App'x 143, 146-47 (3d Cir. 2008) (McKee, J., concurring) ("I simply can not agree that no reasonable juror would find that placing a known sexual abuser in a home with minor children, with no warning to the foster parents (and with reassurances), is tantamount to deliberate indifference. Rather, I believe a reasonable jury could quite easily conclude that such conduct shocks the conscience."); *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 399 (E.D. Pa. 2012) (denying motion to dismiss substantive due process claim on special relationship theory).[4]

---

[3] The Third Circuit in *Nicini* found at summary judgment that the plaintiff failed to adduce sufficient evidence that the defendant acted with deliberate indifference and noted that the record demonstrated, at most, negligence. *See Nicini*, 212 F.3d at 812-15. The conduct alleged here, though, as detailed in the text, far surpasses that which was at issue in *Nicini*.

[4] I pause briefly to address Goshert and Rambus' position that because Plaintiffs do not allege that anyone has ever been charged criminally for the allegations of sexual abuse, they cannot establish any constitutional violation. (*See* Doc. 39, 9). That point is not well taken. No authority is cited for that proposition, and I fail to

Ross and Sheridan's contentions as to the sufficiency of the allegations of conscious shocking behavior are equally unconvincing. The core of their challenge is that the Amended Complaint alleges only that E.R. had a "history of abuse," not that E.R. was an "abuser[ ] or that Concern Defendants had knowledge that he previously abused others." (Doc. 54, 4-6, 8-9). But the Amended Complaint alleges not merely that E.R. had a "history of sexual abuse, including sexual abuse" but also that he "was not supposed to be around other children" or "placed with other children." (Doc. 29, ¶¶ 141-142, 181). Yet, despite knowing these facts, Ross and Sheridan permitted Ryan to take in other foster children, including G.S. and C.J. (*See id.* at ¶ 181). At this stage in the proceedings, these allegations sufficiently detail conscious shocking behavior by Ross and Sheridan in that they knowingly disregarded E.R.'s history and documented recommendation that he not be housed with other children and placed G.S. and C.J. in Ryan's care. *See*, *e.g.*, *K.S.S.*, 871 F. Supp. 2d at 401 ("if the County knew or had reason to know of Diamond's pedophilic tendencies and nonetheless permitted K.S.S. to be entrusted to his care, then such conduct could arguably be described as 'egregious' and 'outrageous.'").

The Amended Complaint also states a plausible substantive due process claim on a state-created danger theory. Under this theory, a substantive due process violation "can occur when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (quoting *Schieber v. City of Phila.*, 320 F.3d 409, 416 (3d Cir. 2003)). To successfully plead a state-created danger claim, a plaintiff must allege four elements:

> 1. the harm ultimately caused was foreseeable and fairly

---

see how the lack of criminal charges against E.R. - or anyone else for that matter - establishes, as a matter of law, that Plaintiffs suffered no harm, where, as here, they allege that they were the victims of sexual abuse.

direct;

2. a state actor acted with a degree of culpability that shocks the conscience;

3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2015) (quoting *Bright*, 443 F.3d at 281).

County Defendants and Concern Defendants contend that a viable state-created danger claim is not presented in the Amended Complaint. In a single paragraph, County Defendants, without any detail or analysis, argue that the Amended Complaint fails to establish any of the elements necessary for this claim. (*See* Doc. 39, 11).[5] Concern Defendants, on the other hand, challenge only the second and fourth elements of Plaintiffs' state-created danger claim.

Plaintiffs adequately plead the necessary elements of their state-created danger claim. To plead the first element, the factual allegations must plausibly show that the harm suffered was a "foreseeable and fairly direct" consequence of a defendant's actions. To meet the "foreseeable" prong, the plaintiff must "allege an awareness on the part of the state actors that rises to level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. County of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008). As to the "fairly direct" prong, "the plaintiff must plausibly allege that state officials' actions precipitated or were the catalyst for the harm for which the plaintiff brings suit." *Henry v. City of*

---

[5]     Given the lack of development by County Defendants on these points, I could summarily deny this portion of their motion to dismiss. *See, e.g.*, *Rankin v. Majikes*, No. 14-699, 2014 WL 6893693, at *12 (M.D. Pa. Dec. 5, 2014).

*Erie*, 728 F.3d 275, 285 (3d Cir. 2013) (citation omitted) (internal quotation marks omitted). Here, Plaintiffs allege that Goshert, Rambus, Ross, and Sheridan knew of E.R.'s history of abuse, that he was not supposed to be housed with other children, and that they withheld and never disclosed information about E.R. to M.J. Nonetheless, they placed G.S. and C.J. in Ryan's home and then declined to remove the children after the instances of sexual abuse were first reported. Given these well-pleaded facts, the Amended Complaint adequately avers that the sexual abuse alleged by Plaintiffs was a "foreseeable and fairly direct" result of the decision to place G.S. and C.J. in foster care in Ryan's home. *See K.S.S.*, 871 F. Supp. 2d at 400-01.

Second, for reasons previously explained, the Amended Complaint details conscience shocking behavior by Goshert, Rambus, Ross, and Sheridan.

The third element of the state-created danger theory requires a plaintiff to allege that "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's action, as opposed to a member of the public in general." *Bright*, 443 F.3d at 281 (internal citations and quotation marks omitted). "The bar for proving this element is not terribly high, . . ." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017). And, "[a] special relationship is not required" to meet this element. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247 n.57 (3d Cir. 2016). Having been placed in Ryan's home, G.S. and C.J. were foreseeable victims of abuse by her son. *See K.S.S.*, 871 F. Supp. 2d at 401; *accord D.N. ex rel. Nelson v. Snyder*, 608 F. Supp. 2d 615, 626-27 (M.D. Pa. 2009) ("These acts of concealment placed a discrete class of individuals - Pennsylvania foster children - in danger; D.N. and S.N. fall squarely within this discrete class. Under the circumstances, it was reasonably foreseeable that Fernsler would exploit his status as a foster parent to abuse a foster child.").

The final element of a state-created danger claim requires a plaintiff to allege that "a state actor affirmatively used his or her authority in a way that created a danger

to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *L.R.*, 836 F.3d at 242. "This element asks whether the state's conduct created or increased the risk of danger to the plaintiff. . . . It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Id.* (quotation, citation, and alteration omitted).

Ross and Sheridan contend that Plaintiffs' state-created danger claim falls at this element because there is no direct causal relationship between their action and minor Plaintiffs' alleged molestation. (*See* Doc. 41, 8-9). Here, the placement of G.S. and C.J. in a foster home constitutes an affirmative act. *See Henry A. v. Wilden*, 678 F.3d 991, 1003 (9th Cir. 2012) (reversing district court's dismissal of state-created danger claim and noting that "the State's approval of a foster care placement despite reports of suspected abuse creates a danger of abuse that the foster child would not otherwise have faced"); *Bryan*, 293 F. App'x at 146 (McKee, J., concurring) ("it can not seriously be maintained that placing J.O. in their home is anything other than an affirmative act."); *see also K.S.S.*, 871 F.3d at 403; *Ford v. Johnson*, 899 F. Supp. 227, 233 (W.D. Pa. 1995) ("the state-created danger theory has been clearly recognized when the State fails to protect children in foster homes from mistreatment at the hands of their foster parents"). The allegations here are sufficient to withstand a challenge under Rule 12(b)(6). *Accord Hayes v. Erie Cnty. Office of Children & Youth Servs.*, 497 F. Supp. 2d 684, 696-97 (W.D. Pa. 2007) ("To the extent Defendants are challenging the required causal connection, the legal sufficiency of Plaintiffs' claim may ultimately depend, at least in part, on the quality of notice that OCY had concerning Iarussi's unfitness to parent. However, this question is better addressed on a more fully developed record. For present purposes, we conclude that Plaintiffs have successfully alleged a constitutional violation under the state-created danger theory.").

**B.    *Monell*.**

Count Two of the Amended Complaint asserts a *Monell* claim against the

County, LCCYS, and Concern.[6] "[M]unicipalities and other local government units [are] to be included among those persons to whom § 1983 applies," and municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035 36, 56 L. Ed. 2d 611 (1978). In *Monell*, the Supreme Court held that a municipality will not be found liable for the unconstitutional acts of a state actor unless the conduct that caused the harm was pursuant to a government policy, custom, or practice. 436 U.S. at 690-91, 98 S. Ct. 2018. Instead, a § 1983 claim against a municipality requires a plaintiff to: (1) identify a policy or custom that deprived him of a federally protected right; (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Bell v. City of Phila.*, 629 F. App'x 214, 216 (3d Cir. 2015).

County Defendants contend that Plaintiffs fail to present a viable *Monell* claim because the Amended Complaint is devoid of facts to support such a claim and consists solely of generalized allegations "dressed up as policy." (*See* Doc. 39, 13). County Defendants further argue that the allegations fail to provide a direct causal link between the County's policies/customs and the alleged deprivation of Plaintiffs' constitutional rights. (*See id*. at 13-14).

Plaintiffs' *Monell* claim will not be dismissed. In the matter *sub judice*, Plaintiffs allege that County Defendants' policies/customs include, *inter alia*:

---

[6]      Concern Defendants have not moved for dismissal of Count Two. (*See* Doc. 37, *generally*).

13

concealing known and unfavorable information about foster homes and families; failing to adequately supervise foster homes; failing to disclose to the natural parents all of the known safety risks regarding a given placement; and providing inadequate supervision and training to caseworkers. (Doc. 29, ¶¶ 129-135). Plaintiffs also identify other instances in which the County and LCCYS allegedly placed children in homes with known abusers. (*See id.* at ¶ 120-123). Courts have found similar allegations sufficient to state plausible substantive due process claims against a municipality. *See*, *e.g.*, *Kane v. Chester Cnty. Dep't of Children, Youth, & Family*, 10 F. Supp. 3d 671, 689-90 (E.D. Pa. 2014); *K.S.S.*, 871 F. Supp. 2d at 403 (allegations that municipality inadequately trained its employees and had policies "of placing children within foster and/or adoptive families failed to include reasonable measures to provide proper screening of foster and/or adoptive parents, as to avoid the risk of sexual molestation and sexual assault upon innocent young children" sufficient to withstand a 12(b)(6) challenge); *Hayes*, 497 F. Supp. 2d at 702-03. Plaintiffs' allegations are sufficient to survive County's Defendants motion to dismiss Count Two of the Amended Complaint.

## C.     Intentional Infliction of Emotional Distress.

Count Three of Plaintiffs' Complaint asserts a state law claim for intentional infliction of emotional distress against the individual Defendants, *i.e.*, Goshert, Rambus, Ross, Sheridan, and Ryan. They have all moved for dismissal of that claim.

To state an intentional infliction of emotional distress claim under Pennsylvania law, a plaintiff must allege: "(1) extreme and outrageous conduct, (2) which is intentional or reckless; (3) it must cause emotional distress, and (4) that distress must be severe." *Minor v. Cumberland Twp.*, 258 F. Supp. 3d 518, 532 (E.D. Pa. 2017) (citing *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997)). Because the Amended Complaint adequately alleges each of these elements, Plaintiffs will be permitted to proceed with their intentional infliction of emotional distress claim.

Conduct is "extreme and outrageous" when it is "'so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First National Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987)).  The gravamen of the emotional distress claim is that individual Defendants placed (or in Ryan's case, allowed to be placed) G.S. and C.J. in Ryan's home despite knowledge of E.R.'s history of abuse and recommendations that he not be housed with other children.  Such conduct, for purposes of the present motion, can "easily be considered so extreme and outrageous as to go beyond all possible bounds of decency in a civilized society." *Kane*, 10 F. Supp. 3d at 692.  Plaintiffs likewise allege that this conduct was intentional or reckless and that G.S. and C.J. suffered severe distress as a result.  Plaintiffs have sufficiently pled the necessary elements of an intentional infliction of emotional distress claim. *See*, *e.g.*, *Bryan*, 2009 WL 1360866, at *9; *see also Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 645-46 (E.D. Pa. 2014) (allegations that plaintiff suffered severe emotional distress that manifested itself "physically in the form of financial loss, sleep deprivation, reoccurring nightmares and other physically disabling manifestations" sufficient to state a claim).

Moreover, dismissal of the intentional infliction of emotional distress claim against Goshert and Rambus pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), *see* 42 Pa. C.S.A. § 8541 *et seq.*, is not warranted.

> Municipal employees . . . are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment.  42 Pa. Cons.Stat. § 8545.  However, there is an exception to this general rule: Employees are not immune from liability under § 8545 where their conduct amounts to "actual malice" or "willful misconduct":

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of section[ ] 8545 . . . shall not apply.  42 Pa. C.S.A. § 8550.

15

*Sanford*, 456 F.3d at 315. A claim for intentional infliction of emotional distress, "by its very nature, is a claim of willful misconduct.*" L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 930 (M.D. Pa. 2016); *accord Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) ("Willful misconduct in this context has the same meaning as the term intentional tort."). Thus, Goshert and Rambus are not entitled to statutory immunity on Plaintiffs' intentional infliction of emotional distress claim.

## D.    Vicarious Liability.

In Count Four of the Amended Complaint, Plaintiffs assert a claim for vicarious liability against the County, LCCYS, and Concern.

Plaintiffs' vicarious liability claims against the County and LCCYS will be dismissed. The PSTCA "provides absolute immunity to local agencies except for eight statutorily defined exceptions." *Spiker v. Allegheny Cnty. Bd. of Probation & Parole*, 920 F. Supp. 2d 580, 612 (W.D. Pa. 2013). "Local agency" is defined as "[a] government unit other than the Commonwealth government." 42 Pa. C.S.A. § 8501. Section 8542(a) states:

> (a) Liability imposed.--A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa. C.S.A. § 8542(a). Under§ 8542(b), "[t]he following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:" (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property;

(4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and, (8) care, custody or control of animals. 42 Pa. C.S.A. § 8542(b).

The County and LCCYS have immunity from Plaintiffs' intentional infliction of emotional distress claim. *See*, *e.g.*, *Parks Miller v. Centre Cnty.*, No. 15-1754, 2016 WL 2752645, at *15 (M.D. Pa. May 11, 2016) (dismissing intentional infliction of emotional distress claim against local agency pursuant to the PSTCA); *Pribula v. Wyoming Area Sch. Dist.*, No. 2007 WL 2065830, at *4-5 (M.D. Pa. July 16, 2007) (same). Moreover, Plaintiffs' negligence claim does not implicate any of the exceptions set forth in § 8542(b). *See Hayes*, 497 F. Supp. 2d at 705. Thus, Plaintiffs' vicarious liability claim against the County and LCCYS will be dismissed.

Concern also seeks dismissal of Plaintiffs' vicarious liability claim. Concern first argues it is not vicariously liable for Ryan's actions.[7] Second, the vicarious liability claim based on Ross and Sheridan's conduct fails, contends Concern, because the Amended Complaint does not state viable underlying claims against Ross or Sheridan for intentional infliction of emotional distress or negligence.

The vicarious liability claim against Concern predicated on Ryan's intentional infliction of emotional distress on minor Plaintiffs will be dismissed. Under Pennsylvania law, "[i]f a particular agent is not a servant, the principal is not considered a master who may be held vicariously liable." *Valles v. Alert Einstein Med. Ctr.*, 758 A.2d 1238, 1244 (Pa. Super. Ct. 2000). "As a general rule, a master may be held liable for the acts of the servant when those acts are committed during the course

---

[7]    Relying on *I.H. ex rel. Litz v. Cnty. of Lehigh*, 81 F.3d 797 (2010) in its opening brief, Concern asserted that it could not be vicariously liable for Ryan's negligence. (*See* Doc. 41, 16-17). Plaintiffs did not respond to this argument in their opposition brief. (*See* Doc. 52, 22-25 ("*I.H.* involved negligence and the instant case involves Concern's vicarious liability for Ryan's intentional infliction of emotional distress.")). I construe Plaintiffs' silence on the issue as a concession that they do not have a viable vicarious liability claim against Concern based on Ryan's negligence.

of his employment and within the scope of his authority." *I.H.*, 610 F.3d at 802 (quotation and citation omitted). In certain circumstances, an employer's vicarious liability may extend to intentional acts committed by an employee. *See Valles*, 758 A.2d at 1244. But, "if the act is done for personal reason, or in an outrageous manner, it is not done within the scope of employment." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39 (Pa. Super. Ct. 2000).

Dismissal of the vicarious liability claim against Concern based on Ryan's conduct is warranted for two reasons. First, Plaintiffs fail to allege sufficient factual matter to support the finding of a master-servant relationship between Concern and Ryan. While Plaintiffs rightly note that *I.H.* was decided at summary judgment and did not involve intentional tort claims, the court's reasoning is still applicable here. As the Third Circuit explained, "[t]he relationship between a foster care agency and a foster parent is unlike that of the typical master and servant." *I.H.*, 610 F.3d at 810.

> Within the framework provided by the agency, foster parents are given considerable latitude in meeting the goals of each child's individual service plan. This is by design, as the Commonwealth requires placements that, as much as possible, "replicate . . . the traditional family setting[ ]." 55 Pa.Code § 3130.67(b)(7)(i). Implicit in the foster parent-foster child relationship is a level of parental autonomy that permits foster parents, on a daily basis, to adjust their care to the individualized needs of their foster child, just as biological parents would in a "traditional family setting."

*Id*. The Court further explained that "[g]iven the highly individualized and dynamic adjustments that foster parents must make in fulfilling the ongoing obligations to their foster children, it would be similarly improvident and unworkable to interject an element of the foster agency's control into such a relationship." *Id*. at 811 (quotation marks and alteration omitted). In the matter *sub judice*, Plaintiffs have not provided any non-conclusory factual averments in the Amended Complaint indicative of a master-servant relationship between Concern and Ryan.

Second, Ryan's alleged intentional conduct does not present a viable vicarious liability claim against Concern because Plaintiffs fail to identify how this occurred

within the scope of her agency with Concern. Indeed, while Plaintiffs argue that Ryan knew about the sexual abuse of minor Plaintiffs and did nothing to stop it, (*see* Doc. 52, 24-25), they provide no explanation for how her acts were of the kind she was to perform for Concern or how she was actuated by an intent to serve Concern. *See Doe 6 v. Pa. State Univ.,* 982 F. Supp. 2d 437, 441-42, 444-45 (E.D. Pa. 2013). Concern is therefore not liable for Ryan's conduct which Plaintiffs allege constituted intentional infliction of emotional distress. *See, e.g.*, *Smith v. Pathmark Stores, Inc.*, No. 97-1561, 1998 WL 309916, at *7 (E.D. Pa. June 11, 1998) (dismissing intentional infliction of emotional distress claim under *respondeat superior* theory because employee's conduct was not performed in the course of his employment); *Rudas v. Nationwide Mut Ins. Co.*, No. 96-5987, 1997 WL 634501, at *4-5 (E.D. Pa. Sept. 26, 1996) (granting summary judgment to employer on intentional infliction of emotional distress claim under *respondeat superior* theory).[8]

However, the vicarious liability claim against Concern for Ross and Sheridan's actions will not be dismissed. The only ground raised by Concern for dismissal of this claim is that the Amended Complaint fails to adequately allege underlying negligence and intentional infliction of emotional distress claims against Ross and Sheridan. But, as set forth above with respect to the intentional infliction of emotional distress claim and below with regard to the negligence claim, Plaintiffs sufficiently plead these state law tort causes of action. Accordingly, Plaintiffs will be permitted to proceed with their vicarious liability claim against Concern related to the actions of Ross and Sheridan.

---

[8]     This claim, as well as the vicarious liability claim against the County and LCCYS, will be dismissed without leave to amend. Although "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a), leave is not required when amendment would be futile. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). Amendment of the dismissed claims would be futile for reasons explained in the text. Thus, those claims will be dismissed with prejudice.

**E.  Negligence.**

Count Five of the Amended Complaint sets forth a claim for negligence against Concern Defendants and Ryan.  Concern Defendants contend that Plaintiffs' negligence claim should be dismissed for failure to establish breach of duty or causation.  (*See* Doc. 41, 14-15).  Ryan likewise argues that the claims against her should be dismissed.  (*See* Doc. 38, *generally*).

"The elements of negligence under Pennsylvania law are: (1) 'a legally recognized duty or obligation of the defendant,' (2) 'the breach thereof,' and (3) a 'causal connection' between the breach and the plaintiffs' damages." *Shuker v. Smith & Nephew, PCL*, 885 F.3d 760, 776 (3d Cir. 2018) (quoting *Green v. Pa. Hosp.*, 123 A.3d 310, 315-16 (Pa. 2015)).  As the Third Circuit noted in *I.H.*, "private foster care agencies remain liable for their own acts of negligence - for instance, in negligently placing a child in an unsuitable environment." *I.H.*, 610 F.3d at 803 n.7.  "If a foster care agency fails to perform its duties in a given case, a direct claim of negligence can be made out against it for a breach of those duties . . . .  Therefore, a foster care agency remains liable in those instances where the breach of its duty to exercise due care in the selection of foster parents and to oversee diligently the rendition of proper care by the foster parents' results in injury." *Id.* (quotation, citation, and alterations omitted).

Here, Plaintiffs adequately plead their negligence claim against Concern Defendants and Ryan.  More particularly, Plaintiffs allege, *inter alia*, that Concern Defendants failed to adequately evaluate whether G.S. and C.J.'s placement was appropriate in Ryan's home and thereafter failed to ensure the children were safe once they were placed therein.  For present purposes, this is sufficient to satisfy the notice pleading requirements of Rule 8 to state a negligence claim against Concern Defendants.  *See*, *e.g.*, *S.B. ex rel. D.M. v. City of Phila.*, 07-768, 2007 WL 3010528, at *3 (E.D. Pa. Oct. 12, 2007) ("From reading plaintiff's complaint, it is clear that plaintiff has alleged that defendants had a duty of care by virtue of their various relationships with the foster-home-placement-and-supervision process, and that they

breached that duty by (1) not adequately vetting the Whitfields before placing D.M. in their care, and (2) not adequately supervising the Whitfields once D.M. was in their care."); *see also Jordan v. City of Phila.*, 66 F. Supp. 2d 638, 644 (E.D. Pa. 1999) (denying motion to dismiss negligence *per se* claim filed by agency providing foster services and two of its employees). Likewise, Plaintiffs adequately allege that Ryan failed to use reasonable care as G.S. and C.J.'s foster mother responsible for their care and custody. *Accord M.B. ex rel. T.B. v. City of Phila.*, 128 F. App'x 217, 229 (3d Cir. 2005) (affirming denial of foster mother's motion for new trial on negligence claim and noting that she had a duty of care as "the foster parent responsible for the care and custody" of the minor child). The negligence claim in Count V of the Amended Complaint will not be dismissed.

## F.    Punitive Damages.

County Defendants also seek dismissal of Plaintiffs' demand for punitive damages for the claims in Counts One and Three against Goshert and Rambus. (See Doc. 39, 20-21).[9]

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). Punitive damages may also be recovered on claims for intentional infliction of emotional distress. *See A.C. v. Scranton Sch. Dist.*, 191 F. Supp. 3d 375, 392 (M.D. Pa. 2016). Whether an award of punitive damages is warranted involves "a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed." *Miller v. Helm*, No. 17-1590, 2017 WL

---

[9]    County Defendants also seek dismissal of the demand for punitive damages in Count Four of the Amended Complaint. (*See* Doc. 39, 20-21). The dismissal of Count Four as to the County and LCCYS necessarily encompasses the demand for punitive damages against them related to that Count.

6405738, at *7 (M.D. Pa. Dec. 15, 2017). Indeed, "this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery." *Campbell v. Balon*, No. 16-779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017); *Bobrick Washroom Equip., Inc. v. Scranton Prods., Inc.*, No. 14-853, 2017 WL 2126320, at *11 n.15 (M.D. Pa. May 16, 2017).

Goshert and Rambus' challenge to the demand for punitive damages fails. The allegations in the Amended Complaint are sufficient to support a facially plausible claim for punitive damages. As such, the demand for punitive damages will not be dismissed.

## G. Motion to Strike.

Lastly, County Defendants seek to strike a number of paragraphs from the Amended Complaint. (*See* Doc. 39, 19-20 (referring to ¶¶ 29-31, 60-69, 71, 81, 82, 106-119, and 121-127)). That request will be denied. Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 421 (E.D. Pa. 2016) (quotation and citation omitted). "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id*. (quotation and citation omitted). The allegations challenged by County Defendants are not of such a nature that warrant relief under Rule 12(f).

## IV. Conclusion

For the above stated reasons, County Defendants' motion to dismiss will be granted in part and denied in part. Plaintiffs' vicarious liability claim against the County and LCCYS will be dismissed with prejudice. County Defendants' motion will be denied in all other respects.

Concern Defendants' motion to dismiss will be granted in part and denied in part. The vicarious liability claim against Concern for Ryan's actions will be dismissed because Plaintiffs fail to adequately allege the existence of a master-servant relationship between Concern and Ryan. The motion to dismiss filed by Concern Defendants will otherwise be denied.

Defendant Ryan's motion to dismiss will be denied in its entirety.

An appropriate order follows.


April 25, 2018                              /s/ A. Richard Caputo
Date                                        A. Richard Caputo
                                            United States District Judge